```
                                      UNITED STATES DISTRICT COURT
                                      SOUTHERN DISTRICT OF FLORIDA

                                      CASE NO. 07-14280-CIV-GRAHAM
                                      MAGISTRATE JUDGE P. A. WHITE

WILLIAM WACHTER,               :

       Plaintiff,              :

v.                             :       REPORT AND RECOMMENDATION
                                       OF MAGISTRATE JUDGE
J. HARRIS, ET AL.,             :

       Defendants.             :
_____
```

## I. Introduction

The plaintiff William Wachter, currently incarcerated at the Okaloosa Correctional Institution, filed a pro se civil rights complaint against four defendants[1] pursuant to 42 U.S.C. §1983 concerning events that transpired on January 21, 2005 when he was incarcerated at the Okeechobee Correctional Institution ("OCI"). [DE# 1]. The plaintiff's allegations were summarized in the Preliminary Report as follows:

> The plaintiff alleges that on January 21, 2005 Harris and Monterro started to escort the plaintiff from his cell to medical, and the plaintiff informed them that the ankle restraints were too tight and the plaintiff could not walk. He states that Harris and Montero refused to loosen the restraints, and when the plaintiff refused to walk they returned him to his cell. Three hours later, Harris and Montero returned to the plaintiff's cell and placed him restraints. At that time, they started making verbal comments and threats, such as calling him "snitch" and "fuck boy" and threatening to "slap the shit" out of him. The plaintiff states that when he was out of view of the security camera, Harris punched him in the back of the head and smashed his face into a doorframe. Subsequently, the plaintiff received an allegedly false disciplinary report concerning the incident and was placed on close management.

---

[1] Wachter named the following defendants: (1) Crosby, Secretary, Florida Department of Corrections (2) OCI Officer J. Harris (3) OCI Officer Monterro (4) OCI Warden Ellis.

[DE# 7, p. 3-4].

In the complaint, Wachter alleged that Harris violated his Eighth Amendment rights by engaging in excessive force; Monterro violated his Eighth Amendment rights by failing to intervene to stop the use of excessive force; Monterro violated his right to due process by failing to provide an accurate portrayal of the events in connection with the investigation of the disciplinary report; and Ellis and Crosby failed to properly train their subordinates. [DE# 1]. A Preliminary Report recommended (1) that the plaintiff alleged sufficient facts to state a claim for relief against Harris and Monterro regarding the alleged use of excessive force (2)that the due process claim against Monterro be dismissed and (3) all claims against Crosby and Ellis be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.[2] [DE# 7].

**This Cause is before the Court upon a Motion for Summary Judgment, with multiple exhibits, filed jointly by defendants Harris and Montero [DE# 67].** The defendants argue that (1) Wachter failed to prove a constitutional violation against Harris for use of excessive force, (2) Wachter failed to prove a constitutional violation against Montero for failure to intervene, (3) Wachter cannot recover under 42 U.S.C. §1983 on a theory of negligence, (4) Wachter failed to exhaust his administrative remedies under the Prison Litigation Reform Act 42 U.S.C. §1997(e) as to Montero, (5) Harris and Montero are entitled to qualified immunity, and (6) Watcher is not entitled to punitive damages. [DE# 67, p. 2].

The Court advised the plaintiff of his right to respond. [DE# 70].[3] Accordingly, Wachter filed a response to the

---

[2] The District Court has not formally adopted the Preliminary Report.

[3] Rule 56© of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the mov- ing party is entitled to judgment as a matter of law.

In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Court held that

defendants' motion for summary judgement along with an appendix. [DE#s 72-73].

## II. <u>Analysis</u>

**Failure to Exhaust Administrative Remedies**

Montero proffers a defense that Wachter's complaint is subject to dismissal, pursuant to 42 U.S.C. §1997e(a), for failure to exhaust his available administrative remedies before filing suit in federal court, as required under the Prison Litigation Reform Act of 1995 ("the PLRA"). The motion for summary judgement does not assert this argument as to Harris.

---

summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir. 1987), an Order of Instruction [DE# 70] was entered, informing plaintiff Wachter as a <u>pro se</u> litigant, of his right to respond to the defendants' motion for summary judgment. The Order [DE# 70] specifically instructed Wachter regarding the requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such a motion.

3

The PLRA, as enacted on April 26, 1996, significantly altered a prisoner's right to bring civil actions *in forma pauperis*. Upon its enactment, the PLRA placed new restrictions on a prisoner's ability to seek federal redress concerning prison conditions (conditions of confinement). Subsection (a) of 42 U.S.C. §1997e, which is part of the PLRA, reads, as follows:

> Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Courts have held that satisfaction of the PLRA exhaustion requirement serves as a threshold issue, since the statutory mandate requires a prisoner to have fully exhausted the administrative remedies/processes which are available to him or her, <u>before</u> bringing suit on a claim in federal court, regardless of the form of relief that the administrative process makes available. <u>See</u> <u>Booth v. Churner</u>, 532 U.S. 731, 736-41 (2001); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11 Cir. 1998); <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11 Cir. 1999); <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11 Cir. 1999); <u>Harper v. Jenkin</u>, 179 F.3d 1311, 1312 (11 Cir. 1999).

The inmate grievance procedure for Florida Inmates, as published in the Florida Administrative Code ("F.A.C.") at §33-103, "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrongs." <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1155 (11 Cir. 2005). The rules provide first for an inmate to file an Informal Grievance, <u>see</u> <u>F.A.C.</u> §33-103.005(1), and thereafter, if dissatisfied with the response, to file a formal grievance at the institution, <u>see</u>: <u>F.A.C.</u> §33-103.006. In the event that the inmate feels the grievance was not satisfactorily resolved during the formal grievance procedure, he may file a Request for

Administrative Remedy or Appeal to the Office of the Secretary [Bureau of Inmate Grievance Appeals]. <u>See</u> <u>F.A.C.</u> §33-103.007; <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1288 (11 Cir. 2004).

Under certain circumstances, the inmate may bypass the filing of an informal grievance, and proceed directly to the filing of a formal grievance. (This includes instances of emergency, reprisal, or medical concerns).[4]  <u>F.A.C.</u> §33-103.005. Thereafter, if the formal grievance at the institutional level is properly filed, and denied, the inmate must file an Appeal at the DOC Central Office in Tallahassee. <u>F.A.C.</u> §33-103.007.

Here, Wachter lodged an emergency formal grievance by filing a Request for Administrative Remedy or Appeal on January 22, 2005 wherein he asserted the following:

> I am writing this as a (sic) emergency grievance.  Friday the 20th of January at around 12:30 while being ascorted (sic) to medical, Officer Harris after having threating (sic) words for me-name calling-an such (sic)-smashed my face into the door frame of the front door of B-Dorm front enterence (sic). Right side coming from wing two.  An (sic) I was hit with a left punch to the mouth following the smash to the face. Officer Montero was present-He grab (sic) Harris and pulled Harris back -and stated "Come on man-we'll say he lunge (sic) at you."  If that was true, why wasn't I put on the ground and restrained? I was already secured, chained to the max!

[DE# 67-2, p. 123].

On January 25, 2005, Wachter received a response which provided: "Your allegations of physical abuse have been reported to the Office of the Inspector General for any action they deem appropriate.  Your grievance is approved, pending their review and/or investigation." [DE# 73-1, p. 62].  Because Wachter's grievance was approved, Wachter was not required to appeal to the

---

[4]     For example, as provided under <u>F.A.C.</u> §33-103.005, when the inmate is filing an emergency grievance, or a grievance of reprisal, the informal grievance may be skipped, and the inmate may proceed directly with the filing of a formal grievance, which is thereafter to be followed by an Appeal to the DOC Central Office in Tallahassee.

Office of the Secretary in Tallahassee. See F.A.C. §33-103.006(7)(providing that the response must inform the grievant of the right to appeal "if the grievance is **denied**.") (emphasis supplied). Accordingly, by taking these steps, Wachter exhausted his administrative remedies, at least as to Harris. Because Harris does not assert a failure to exhaust argument, the motion for summary judgement does not dispute this conclusion.[5] Instead, Montero asserts that because the emergency grievance filed by Wachter on January 22, 2005 does not state that Montero failed to intervene and/or protect Wachter, Wachter did not exhaust his administrative remedies as to Montero. [DE# 67, p. 12].

Claims of excessive force by corrections officers are cognizable under 42 U.S.C. §1983, as are claims that officers who were present failed to intervene. Fundiller v. City of Cooper City, 777 F.2d 1436 (11 Cir. 1985). Count II of Wachter's complaint accuses Montero of "failing to intervene in the assault of the plaintiff by defendant Harris while plaintiff was in wrist and ankle restraints and unable to defend himself . . . ." [DE# 1]. Wachter's emergency grievance alleges that Montero observed Harris's unprovoked attack and, instead of protecting Wachter, Montero suggested that Harris fabricate a story to explain the unlawful use of force. Accordingly, Wachter used administrative remedies to complain about Montero's failure to intervene.

**Failure to State a Claim Against Harris for**

---

[5] Exhibit H of the motion for summary judgement consists of the January 22, 2005 emergency grievance and a response dated February 17, 2005 wherein the Warden states, "The subject of your grievance is currently being reviewed by the investigative section of the Office of the Inspector General. A copy of your complaint will be forwarded to that section to be included as part of the current review. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling. As this process was initiated prior to the receipt of your grievance, your request for action by this office is denied." Pursuant to the Florida Administrative Code, a denial must be appealed. See F.A.C. §33-103.006(7). However, the February 17, 2005 denial was in response to grievance log number 05-6-04688, Wachter's January 22, 2005 grievance and the January 25, 2005 response thereto (approving Wachter's grievance) are both identified by grievance number 0501-404-096.

**Use of Excessive Force**

The Supreme Court has held that the question of whether a prison guard "inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir. 1973)).

Whether the prison disturbance is a riot or a lesser disruption, the corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates; but the Courts have acknowledged that "both situations may require prison officials to act quickly and decisively...[and] should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Hudson v. McMillian, 503 U.S. 1 (1992)(quoting Whitley, 475 U.S. at 321-22); Brown v. Smith, 813 F.2d 1187 (11 Cir. 1987).

The test to determine whether a claim of excessive force rises to a constitutional level of cruel and unusual punishment involves both subjective and objective components.

The subjective component relates to whether a defendant possessed a wanton state of mind while applying force, and requires the claimant to show that the prison officers' actions were malicious and sadistic, and for the purpose of causing harm, or unnecessary and wanton pain and suffering upon the prisoner. Hudson, 503 U.S. at 6-7; Rhodes v. Chapman, 452 U.S. 337 (1981); Gregg v. Georgia, 428 U.S. 153 (1976); Stanley v. Hejirika, 134 F.3d 629, 634 (4 Cir. 1998); Branham v. Meachum, 77 F.3d 626, 630 (2 Cir. 1996); Bennett v. Parker, 898 F.2d at 1532-33.

Thus, under the Eighth Amendment, force may be employed in a custodial setting as long as it is not done "maliciously and sadistically to cause harm," but applied in a good faith effort to maintain or restore discipline. Brown v. Smith, 813 F.2d 1187, 1188 (11 Cir. 1987); Skritch v. Thornton, 280 F.3d 1295, 1300 (11 Cir. 2002), citing Whitley v. Albers, 475 U.S. 312 (1986)

(quotations omitted). The factors relevant to the determination of whether the force was used maliciously and sadistically with the purpose of causing harm include: 1) the extent of the injury inflicted; 2) the need for force; 3) the relationship between the need for force and the amount of force used; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell v. Sikes, 169 F.3d 1353, 1375 (11 Cir. 1999); Redd v. Conway, 160 Fed.Appx. 858, 860 (11 Cir. 2005), citing Carr v. Tatangelo, 338 F.3d 1259, 1271 (11 Cir. 2003); Bennett v. Parker, 898 F.2d 1530, 1532-33 (11 Cir. 1990); Stanley v. Hejirika, 134 F.3d at 634; Branham v. Meachum, 77 F.3d at 630; Lunsford v. Bennet, 17 F.3d 1574, 1581 (7 Cir. 1994).

Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force (e.g., the application of mace in non-dangerous amounts), to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used. See, e.g., Williams v. Benjamin, 77 F.3d 756, 762-63 (4 Cir. 1996); Soto v. Dickey, 744 F.2d 1260, 1270-71 (7 Cir. 1984); Spain v. Procunier, 600 F.2d 189, 195 (9 Cir. 1979); Williams v. Scott, 116 F.3d 1483 (7 Cir. 1997); Barr v. Williamsburg Co. Sheriff's Dept., No. C/A2:02-0167-22AJ, 2002 WL 32333152, at *4-5 (D.S.C., Dec. 27, 2002); but see Vinyard v. Wilson, 311 F.3d 1340, 1348-49, n.13 (11 Cir. 2002).

In short, for an inmate to prevail on a claim of excessive force he must satisfy not only the subjective component that the corrections officials acted with a sufficiently culpable state of mind, but also the objective component that he suffered some injury which was sufficiently serious in relation to the need for the application of force to establish constitutionally excessive force. See Whitley, 475 U.S. at 319.

In this case, the parties dispute whether Harris used force in a malicious and sadistic manner or simply to maintain discipline. Wachter described the incident during his deposition. [DE# 73, 73-

8

1]. Harris's version of events is contained in a "Report of Force Used" completed by Harris on the day of the incident and which is attached to the motion for summary judgment. [DE# 67-2, p. 127-28]. According to both accounts, around noon on January 21, 2005, Harris and Montero went to Wachter's cell to escort Wachter to the medical wing. Upon arrival, Harris applied hand and leg restraints.

Harris alleges that Wachter complained that the hand restraints were too tight, therefore, Harris loosened them. [DE# 67-2, p. 127]. Wachter continued to complain as Harris walked him down the hall. [DE# 67-2, p. 127-28]. Wachter started yelling, "These fucking restraints are too tight," at which point Harris ordered Wachter to cease his disorderly behavior. [DE# 67-2, p. 128]. As Harris escorted Wachter through a doorway, Wachter spun around and attempted to head-butt Harris in the face. [DE# 67-2, p. 128]. Harris explained his response as follows:

> I immediately grasped inmate Wachter's left arm with my left hand and placed by right hand in the center of his back and redirected him away from me causing inmate Wachter to strike his head against the wall near the exit door causing a small laceration to the inside of his upper lip, a laceration to his nose and a laceration on his fore-head. I ordered inmate Wachter to cease his disorderly behavior and inmate Wachter complied. I released my grasp on inmate Wachter and stepped back. All force by me ceased at this time. Officer Montero called for Sergeant McCreary, Confinement Housing Supervisor.

[DE# 67-2, p. 128].[6]

Wachter testified during his deposition that while Harris restrained Wachter's hands and Montero looked on, Harris called Wachter a "pussy ass, cracker, snitching, fuck boy." [DE# 73, p. 38-39]. After Harris applied the leg restraints, he asked Wachter "what [his] fucking problem was" and stated, "I will slap the shit

---

[6] In an effort to bolster his claim that he exercised appropriate force in response to Wachter's disorderly behavior, Harris notes that Wachter complained to the warden on January 3, 2005 that due to medication Wachter was taking, namely, interferon, Wachter was having trouble controlling himself. [DE# 67, p. 9; DE# 67-2, p. 129 ]. Harris also stresses that subsequent to being incarcerated in May of 1991, Wachter has been formally disciplined over fifty-five times and has spent half of his incarceration in disciplinary confinement or close management. [DE# 67, p. 4-5; DE# 67-2, p. 121]. These facts are not relevant to the dispositive issue, namely, whether Harris used excessive force during the incident in question.

out of you." [DE# 73, p. 39]. On the way to the medical wing, Harris brought Wachter through a door to a spot not monitored by surveillance cameras at which point the following took place:

> Officer Harris told me to stand right there and don't move, so I stood right there and didn't move. The next thing I knew, my face was being smashed against the door . . . . And when my face bounced off the door, I was hit with a left hand, you know, to my upper lip, mouth area.

[DE# 73, p. 47, 48]. Next, Montero grabbed Harris from behind and said, "we'll say he lunged at you." [DE# 73, p. 51]. Soon thereafter, Sergeant McCreary arrived and took custody of Wachter. [DE# 73, p. 51].

Wachter's deposition testimony, which must be believed, establishes that Harris possessed a wanton state of mind and maliciously applied force against Wachter when Harris punched Wachter twice while Wachter was standing still in hand and leg restraints. See Hudson, 503 U.S. at 6-7. There was no need for force as Wachter posed no threat to the safety Harris or anyone else. See Campbell, 169 F.3d at 1375. Harris's attack resulted in lacerations to Wachter's forehead, nose, and upper-lip.[7] [DE# 73-1, p. 56]. Therefore, Wachter testified to facts which satisfy the objective component that he suffered injuries sufficiently serious in relation to the need for the application of force. See Whitley, 475 U.S. at 319. Meanwhile, accordingly to Harris's version of events, Harris applied force, in response to Wachter's disorderly conduct, in a good faith effort to maintain and restore discipline. See Brown, 813 F.2d at 1188.

In light of the foregoing, an attempt to resolve at summary judgment the issues and facts in dispute pertaining to the use of force during the encounter between inmate Wachter and Officer Harris on January 21, 2005, would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in Anderson v. Liberty Lobby, Inc., "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury

---

[7] Harris does not dispute that Wachter suffered physical injuries.

functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." 477 U.S. 242, 255 (1986)(citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Due to the existence of genuine issues of material fact, summary disposition of the §1983 excessive force claim against defendant Harris is not appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

### Failure to State a Claim Against Montero for Failure to Intervene and Protect

In a case in which excessive force is used, it is not necessary for police officers to actually participate in its use in order to be held liable under §1983. Rather, they can be held liable for their nonfeasance if they are present at the scene and fail to take steps to protect a victim from a fellow officer's use of excessive force. Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985), and cases cited therein.

In an excessive force case such as this one, in which several officers are being sued, not because they were directly involved in applying the alleged force, but rather on the ground that they failed to protect the plaintiff from the use of excessive force, the Courts have held that the following is required for an officer to be held liable on that theory: (1) he or she must have observed or had reason to know that excessive force would be or was being used, and (2) must have had both the opportunity and the means to prevent the harm from occurring. Carr v. Tatangelo, 338 F.3d 1259, 1274, n.27 (11 Cir. 2003) (observing, with regard to defendant officer Mercer, that "it is not credible to event postulate that he [Officer Mercer] had a reasonable opportunity to prevent the shooting," where Mercer did not see the "rapidly escalating" situation, and Mercer was some distance away when his fellow officer shot the plaintiff/appellant Carr); Riley v. Newton, 94 F.3d 632, 635 (11 Cir. 1996) (holding, with regard to officer Gisson who was sued on the ground that he failed to intervene to protect plaintiff Riley from another officer's use of excessive force, Gisson had no reason to suspect the use of excessive force

until after it occurred, and the obligation for him to take steps to protect the plaintiff never arose) (quoting O'Neill v. Kreminiski, 839 F.2d 9, 11-12 (2 Cir. 1988) for its holding that "The three blows were struck in such rapid succession that Conners had no realistic opportunity to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."); Turner v. Scott, 119 F.3d 425, 429 (6 Cir. 1997). Cf. Anderson v. Branen, 17 F.3d 552, 557 (2 Cir. 1994) (holding that in order for liability to attach there must have been a realistic opportunity to intervene to prevent the harm; and that the question whether an officer had sufficient time to intervene or was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise) (citing O'Neill, 839 F.2d at 11-12); Byrd, 783 F.2d at 1007 (vacating entry of summary judgment for a defendant officer, where there was evidence that the officer was present during the encounter in which the plaintiff was allegedly subjected to an unprovoked beating by another officer).

In this case, the facts testified to by Wachter during his deposition are insufficient to establish that Montero failed to intervene. According to Wachter's testimony, Montero arrived with Harris at Wachter's cell. Wachter was not aware of Montero's presence while Harris walked Wachter down the hall. Wachter again saw Montero, immediately after Harris punched him twice, when Montero "literally grabbed [Harris] in a bear hug like tight around his waist when [Wachter] was stumbling back." [DE# 73, p. 55]. Montero then suggested the officers falsely report that Wachter provoked Harris.[8]  Montero states in his affidavit that Harris shackled Wachter and walked him down the hall at which point Montero observed Wachter become disorderly "near the exit door and . . . attempt to head-butt Officer Harris." [DE# 73-1, p. 35]. In response, Harris redirected Wachter "away from him causing

---

[8] This fact, which is disputed by Montero, is only relevant to Wachter's claim that Montero violated his right to due process in connection with his disciplinary report investigation. The Preliminary Report recommended that this claim be dismissed.

inmate Wachter to strike the wall next to the exit door with his forehead." [DE# 73-1, p. 35].

The facts contained in Wachter's deposition establish that Montero observed that excessive force was being used. However, Wachter alleges no facts which show that Montero had both the opportunity and the means to prevent the harm from occurring. See Carr v. Tatangelo, 338 F.3d 1259, 1274, n.27 (11 Cir. 2003). In fact, Wachter's testimony shows that Montero intervened at the earliest possible moment, namely, immediately after Harris punched Wachter twice in quick succession. In light of the foregoing, a summary judgment in Montero's favor on the failure to intervene claim is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(Summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## Qualified Immunity as to Harris[9]

In this case, Harris has raised the defense of qualified immunity. When engaging in an analysis at the summary judgment stage as to whether a defendant may be entitled to qualified immunity, the court must take the facts in the light most favorable to the party asserting the injury. Saucier v. Katz, 533 U.S. 194, 201 (2001); Robinson v. Arrugeta, 415 F.3d 1252, 1257 (11 Cir. 2005); Pace v. Capbianco, 283 F.3d 1275, 1285 (11 Cir. 2002). Qualified immunity, under appropriate circumstances, serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority, if their conduct does not violate clearly established statutory and constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11 Cir. 2002). See also Lee v. Ferraro, 284 F.3d 1188, 1195

---

[9] It is not necessary for this Court to determine whether Montero is entitled to qualified immunity as the Court has decided that a summary judgment is appropriate on the merits of Wachter's failure to intervene claim against Montero.

(11 Cir. 2002); Flores v. Satz, 137 F.3d 1275 (11 Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11 Cir. 1996).

In this case, Harris has overcome his initial burden as he was acting within the scope of his discretionary authority, namely, the authority escort prisoners from place to place within the facility, when the allegedly wrongful acts occurred. See McCullough v. Antolini, 559 F.3d 1201, 1205 (11 Cir. 2009).

Once the defendant has satisfied the initial burden, the plaintiff bears the burden of proving the existence of a clearly established right at the time of the alleged impermissible conduct. See Foy, 94 F.3d at 1532. This does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell v. Forsyth, 472 U.S. 511, 535, n. 12 (1985); "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 639 (1987). In order to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

The Eleventh Circuit, in the Eighth Amendment/prison context,[10] has noted, "By 1998, our precedent clearly established that government officials may not use gratuitous force against a prisoner who has already been subdued, or, as in this case, is incapacitated," Skrtich v. Thornton, 280 F.3d 1295, 1303 (11 Cir. 2002) (citing cases[11]). The Skrtich Court, upon finding that the

---

[10] Relying on Farmer v. Brennan, 511 U.S. 825 (1994), Harris argues that prison officials are liable for violating the Eighth Amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. Farmer is inapplicable in this case because it involved the failure of prison officials to provide inmates with medical care rather than the officials' use of force to maintain order. See Hudson, 503 U.S. at 6 ("Deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance.").

[11] The Skrtich Court cited: Harris v. Chapman, 97 F.3d 499, 505-06 (11 Cir. 1996) (where prisoner, who had resisted haircut and threatened to kill the barber, was forcibly removed from his cell and beaten and restrained by a group of officers, a sixth officer's actions of snapping the prisoner's head back with a towel, slapping him in the face, and uttering racial epithets and other taunts were a constitutional deprivation, meriting award of damages by jury); Davis v. Locke, 936 F.2d 1208, 1212-13 (11 Cir. 1991) (where prisoner who attempted escape

facts of the earlier cases were very similar to those before it on the unlawful infliction of force on nonresisting prisoners, determined that where the circumstances facing the prison guards (specifically, a non-compliant inmate who had been restrained by the guards and no longer posed a threat) "were enough like the facts in precedent that no reasonable, similarly situated official could believe that the factual differences between this line of precedent [i.e. Harris, Davis, Williams, and Perry] and the circumstances here might make a difference to the conclusion about whether the official's conduct was lawful and we find no merit to the defendant officers' arguments claiming entitlement to qualified immunity." Skrtich, 280 F.3d at 1303-04.

In this case, the facts alleged in Wachter's deposition, which must be accepted as true, are similar to those contained in Skrtich and the cases cited therein. Specifically, Wachter alleged that after he complied with Harris's order to turn around and remain still, Harris punched Wachter in the neck and face. Harris's "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992). Because Wachter's right to be free from unnecessary infliction of pain by prison guards is a right that a reasonable officer would understand in light of Skrtich and its progeny, Harris is not protected by qualified immunity. See Saucier, 533 U.S. at 201-02.

### III. Conclusion

---

and was recaptured and placed in a dog box on a truck with his hands shackled behind his back, the action of pulling him by the ankles from the box, causing him to land on his head, causing him to suffer psychological injuries, the court held that the ongoing violation of escape had been terminated, and a jury could reasonably conclude that he posed no continuing risk of threat to the guards); Williams v. Cash - C.O.I., 836 F.2d 1318, 1320 (11 Cir. 1988) (where prisoner refused to comply with a prison guard's order to return to his cell, and prisoner alleged he was subdued and his arm was broken, summary judgment for the guard was not appropriate where the prisoner alleged that the guard purposefully broke his arm after he had ceased to resist); and Perry v. Thompson, 786 F.2d 1093, 1095 (11 Cir. 1986) (Appellate Court, finding a "square, head-on dispute of material facts," reversed grant of summary judgment in prisoner haircut case, where prisoner whose hands were cuffed in front of him, alleged he was thrown to the floor and beaten, the defendant officers' evidence was that the prisoner was shaved without incident and that medical records showed no complaint of injury on the day of the alleged beating).

It is therefore recommended as follows:

1.  The Motion for Summary Judgment [DE# 67] be granted in part as to Montero on the failure to intervene claim and be denied in part as to Harris on the use of excessive force claim.

2.  An Order affirming the Preliminary Report [DE# 7] be entered.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 12th day of November, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   William Wachter, Pro Se
      DC# 485669
      Okaloosa Correctional Institution
      3189 Little Silver Road
      Crestview, FL 32539-6708